# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENWOOD DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>**Plaintiff,**<br><br>v.<br><br>MEDTRONIC, INC.,<br><br>**Defendant.** | Civil Action No.: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to April Jackson ("Jackson") who was adversely affected by such practices. The Equal Employment Opportunity Commission (the "Commission") alleges that Defendant Medtronic, Inc. ("Defendant") denied a reasonable accommodation to, denied permanent hire to, and discharged Jackson on the basis of her disability, in violation of the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina, Greenwood Division. This lawsuit is being filed in the Greenwood Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Greenwood Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a Minnesota corporation registered to conduct business in the state of South Carolina, has continuously been doing business in the State of South Carolina and the City of Greenwood. At all relevant times, Defendant has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## CONDITIONS PRECEDENT

7. More than thirty days prior to the institution of this lawsuit, Jackson filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On February 14, 2019, the Commission issued to Defendant a Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On May 10, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation.

12. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. As described more fully below, from on or around October 3, 2016 through on or around February 12, 2017, Defendant engaged in unlawful employment practices at its Greenwood, South Carolina facility in violation of 42 U.S.C. § 12112(a), when it refused to provide a reasonable accommodation to Jackson, discharged Jackson on the basis of her disability, and denied permanent hire to Jackson on the basis of her disability, as more fully described below.

14. Jackson is and at all relevant times has been a qualified individual with a disability under 42 U.S.C. § 12102 and 42 U.S.C. § 12111(8).

15. Jackson has congenital abnormalities, including unilateral renal agenesis (*i.e.*, the absence of one kidney) and an under-formed, dysfunctional bladder. Jackson's congenital abnormalities substantially limit her ability to process and eliminate bodily waste, specifically

urine, which can result in frequent and potentially severe health effects, such as urinary tract infections and hematuria.

16. At all relevant times, Defendant met the operational needs of its Greenwood, South Carolina facility in part by using employees provided by a temporary staffing agency (the "Staffing Agency").

17. On or around October 3, 2016, the Staffing Agency placed Jackson to work at Defendant's Greenwood, South Carolina facility as a forklift operator/waste hauler.

18. Jackson worked at Defendant's Greenwood, South Carolina facility from on or around October 3, 2016 through on or around February 10, 2017.

19. At all relevant times, Jackson was qualified to perform the essential functions of her job as a forklift operator/waste hauler.

20. At all relevant times, the Staffing Agency was Jackson's direct employer for purposes of her work at Defendant's Greenwood, South Carolina facility.

21. While employed at Defendant's Greenwood, South Carolina facility, Jackson worked a full-time schedule, and occasionally worked overtime.

22. Defendant had the authority to terminate the assignment of any employee placed by the Staffing Agency to work at Defendant's Greenwood, South Carolina facility.

23. Defendant had the authority to terminate Jackson's assignment at its Greenwood, South Carolina facility.

24. One or more of Defendant's employees conducted Jackson's orientation training.

25. One or more of Defendant's employees provided job-specific training to Jackson.

26. One or more of Defendant's employees directly supervised Jackson during the day-to-day performance of Jackson's job duties.

27. Upon information and belief, one or more of Defendant's employees had the authority to discipline Jackson.

28. The work performed by Jackson at Defendant's Greenwood, South Carolina facility was akin to the work performed by individuals directly employed by Defendant at said facility.

29. Jackson used equipment provided by Defendant to perform her job duties at Defendant's Greenwood, South Carolina facility.

30. Defendant required that Jackson adhere to Defendant's employee policies while performing work at Defendant's Greenwood, South Carolina facility.

31. At all relevant times, Defendant was a joint employer of Jackson in relation to the work Jackson performed at Defendant's Greenwood, South Carolina facility.

Discharge

32. At all relevant times, Jackson performed her job duties at a level that met Defendant's legitimate expectations.

33. At all relevant times, Defendant applied an attendance policy to individuals working at its Greenwood, South Carolina facility.

34. Defendant required that Jackson adhere to the aforementioned attendance policy while performing work at its Greenwood, South Carolina facility.

35. Under Defendant's attendance policy, employees received applicable points for an absence regardless of the reason for their absence.

36. Upon information and belief, Defendant's attendance policy did not make an exception for absences taken as leave pursuant to the ADA.

37. On December 20, 2016, Defendant learned that Jackson has only one kidney, and that her condition had caused Jackson to urinate blood for two days.

38. On or around February 6, 2017, Jackson sought medical treatment after experiencing several negative health effects caused by her disability, including urinating blood and a urinary tract infection. Jackson's medical care provider wrote Jackson out of work for three days (*i.e.*, until February 9, 2017).

39. Despite Jackson's doctor's instruction not to return to work, Jackson, who worked the night shift, timely reported for work at or around midnight on the evening of February 6, 2017. Jackson attempted to work her full shift but left early due to her disability.

40. Upon information and belief, prior to leaving her shift early, Jackson provided her shift supervisor, an employee of Defendant, with two copies of the doctor's note excusing Jackson from work until February 9, 2017. Jackson requested that her supervisor provide a copy of the note to Defendant's human resources department once human resources arrived for the day.

41. Jackson did not report for her shift on the evening of February 7, 2017 or the evening of February 8, 2017.

42. Jackson timely reported for work at or around midnight on the evening of February 9, 2017. Jackson worked her shift into the morning of February 10, 2017. Towards the end of Jackson's shift, Jackson was advised by a co-worker that he was there to cover part of Jackson's shift, indicating to Jackson that he presumed Jackson had been terminated.

43. Jackson called her shift supervisor, who confirmed that Jackson had been terminated. The shift supervisor would not disclose to Jackson why she had been terminated, and instead directed Jackson to call Defendant's human resources department.

44. On February 10, 2017, Defendant instructed the Staffing Agency to terminate Jackson's assignment effective immediately.

45. Defendant instructed the Staffing Agency to terminate Jackson's assignment due to Jackson's alleged violation of Defendant's attendance policy.

46. The absences that resulted in Jackson's alleged violation of Defendant's attendance policy were, with one exception, due to Jackson's disability.

47. On or around February 12, 2017, the Staffing Agency employee responsible for servicing Defendant's account requested that Defendant reconsider Jackson's termination, given that Jackson's recent absences were covered by a doctor's note.

48. Upon information and belief, Respondent did not respond to the Staffing Agency's request for reconsideration.

49. Defendant terminated Jackson on or around February 10, 2017 because of her disability in violation of the ADA.

<u>Reasonable Accommodation</u>

50. At all times relevant, Jackson was capable of performing all essential functions of her position with a reasonable accommodation.

51. On or around February 10, 2017, Defendant failed to engage in the interactive process and failed to consider any potential accommodations that would permit Jackson to remain employed. Instead, Defendant summarily terminated Jackson.

52. On or around February 12, 2017, Defendant ignored the Staffing Agency's request that Jackson be reinstated, thereby continuing to deny Jackson reasonable accommodation, continuing to fail to engage in the interactive process, and failing to consider any potential accommodations that would permit Jackson to remain employed.

53. Upon information and belief, Defendant could have accommodated Jackson's disability without an undue hardship on Defendant, and in a manner that would have permitted Jackson to remain employed.

54. Defendant failed to consider *any* accommodation for Jackson before terminating her.

55. Defendant failed to engage in the interactive process prior to terminating Jackson.

56. Defendant failed to provide a reasonable accommodation for Jackson's disability in violation of the ADA.

### Failure to Hire

57. At the time Defendant terminated Jackson's assignment, Defendant was in the process of directly hiring Jackson for permanent employment at Defendant's Greenwood, South Carolina facility.

58. On or around January 16, 2017, Defendant transferred Jackson from a day shift position to a night shift position. Jackson was told the night shift position would be her permanent position once Jackson was directly hired by Defendant.

59. Defendant failed to directly hire Jackson because of her disability in violation of the ADA.

60. The effect of the practices complained of above has been to deprive April Jackson of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability.

61. The unlawful employment practices complained of above were intentional.

62. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of April Jackson.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from any employment practice that discriminates on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make April Jackson whole by providing affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited reinstating Jackson to a direct-hire position or by providing appropriate front pay in lieu thereof.

D. Order Defendant to make April Jackson whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

E. Order Defendant to make April Jackson whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay April Jackson punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 29th day of July, 2019.

Respectfully submitted:

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JAMES L. LEE
Deputy General Counsel
131 M Street, NE
Washington, DC 20507

GWENDOLYN YOUNG REAMS
Associate General Counsel

LYNETTE A. BARNES
Charlotte District Office Regional Attorney

KARA GIBBON HADEN
Supervisory Trial Attorney

s/ *Rachael S. Steenbergh-Tideswell*
RACHAEL S. STEENBERGH-TIDESWELL
South Carolina Federal Bar No. 10867
Senior Trial Attorney
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: (704) 954-6472
Facsimile: (704) 954-6412
Email: rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**